UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

CIVIL ACTION
NO.                    2005 FEB 18  P 12: 28

ONEBEACON AMERICA INSURANCE COMPANY
Plaintiff,

05  10327  RCL

U.S. DISTRICT COURT
DISTRICT OF MASS.

vs.

MAGISTRATE JUDGE RBC

EASTERN YACHT SALES, INC.,
EASTERN YACHT SALES OF RHODE ISLAND, Inc.,
ROBERT L. LUSSIER, and
RONALD LUSSIER

Defendants.

RECEIPT # _____
AMOUNT $250
SUMMONS ISSUED yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK _____
DATE 2/18/05

PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO
28 U.S.C. §2201, et. seq. and F.R.CIV.P.57

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

CIVIL ACTION
NO. 2005 FEB 18 P 12: 28

05    10327    RCL

U.S. DISTRICT COURT
DISTRICT OF MASS.

ONEBEACON AMERICA INSURANCE COMPANY
Plaintiff,

vs.

MAGISTRATE JUDGE RBC

EASTERN YACHT SALES, INC.,
EASTERN YACHT SALES OF RHODE ISLAND, Inc.,
ROBERT L. LUSSIER, and
RONALD LUSSIER
Defendants.

RECEIPT # _____
AMOUNT $250
SUMMONS ISSUED 465
LOCAL RULE 4 1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK_____
DATE 2/18/05

## PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201, et. seq. and F.R.CIV.P.57

Now comes the plaintiff, OneBeacon America Insurance Company, in the above entitled action, by and through its undersigned counsel, Clinton & Muzyka, P.C., and files this Complaint for Declaratory Judgment and states as follows:

### JURISDICTION

1.   This action is an action brought pursuant to the Court's admiralty jurisdiction, 28 U.S.C. §1333, and is a matter within the meaning of Rule 9(h), F.R.Civ.P.

### VENUE

2.   Venue is properly established in this Court pursuant to 28 U.S.C. §1391(b), in that the Defendant, Eastern Yacht Sales, Inc. is a Delaware corporation with its principal place of business in Hingham, Massachusetts; the Defendant,

2

Eastern Yacht Sales of Rhode Island, Inc. is a Delaware corporation with its principal place of business in Portsmouth, Rhode Island; the Defendant Robert Lussier is, upon information and belief, a resident of Bellingham, Massachusetts; and the Defendant Ronald Lussier is, upon information and belief, a resident of Sausalito, California.

**THE PARTIES**

3.   The plaintiff, OneBeacon America Insurance Company (hereinafter referred to as "OneBeacon"), is a Massachusetts insurance corporation with a principal place of business at One Beacon Street, Boston, Massachusetts.

4.   The defendant, Eastern Yacht Sales, Inc. (hereinafter referred to as "Eastern"), is a Delaware corporation with a principal place of business at 335 Lincoln Street, Hingham, Massachusetts.

5.   The defendant, Eastern Yacht Sales of Rhode Island, Inc. (hereinafter referred to as "Eastern R.I."), is a Delaware corporation with a principal place of business at 39 Alexander Road, Portsmouth, Rhode Island.

6.   The defendant, Robert L. Lussier, upon information and belief, is a resident of 33 Trenton Street, Bellingham, Massachusetts.

3

7.     The defendant, Ronald Lussier, upon information and belief, is a resident of 67 Cresent Avenue, Sausalito, California and is subject to the jurisdiction of this Honorable Court.

## CLAIM FOR RELIEF

8.     This is an action brought pursuant to 28 U.S.C. §2201, et. seq., and Rule 57, F.R.Civ.P., in which OneBeacon seeks a declaration that it has no duty to defend and/or indemnify Eastern or Eastern R.I. under certain marine insurance policy overages issued by OneBeacon to Eastern and Eastern R.I. in connection with claims brought by defendants, Robert L. Lussier and Ronald Lussier, as described below.

## COUNT I

9.     OneBeacon reaffirms and realleges its allegations contained in Paragraphs 1 through 8 inclusive and above, with the same force and effect as if more fully set forth herein.

10.    OneBeacon issued by renewal to Eastern and Eastern R.I. on May 1, 2003 a policy of marine insurance, No. C5JH20189, for a term from May 23, 2003 to May 23, 2004, containing a separate and independent overage for Marine Operators Legal liability (MOLL). A copy of the policy is attached hereto as Exhibit "A".

4

11. Defendants, Robert L. Lussier and Ronald Lussier, have instituted a civil action against Eastern, et. al., for property damage loss to the S/V PHOENIX arising out of and resulting from a fire on December 4, 2003.

12. Said civil action is currently pending in the United States District Court for the District of Massachusetts, Civil Action No. 04-CV-11071-RCL. A copy of the Second Amended Complaint is attached hereto as Exhibit "B".

13. Eastern has demanded that OneBeacon defend and indemnify it in connection with the said civil action.

14. Pursuant to the terms and conditions of the aforesaid policy of marine insurance, OneBeacon is not obligated to defend or indemnify Eastern or Eastern R.I. in the said action.

**WHEREFORE**, Plaintiff, OneBeacon America Insurance Company, prays for a judgment declaring that OneBeacon is not obligated to defend and/or indemnify Eastern or Eastern R.I. under the Marine Operators Legal liability (MOLL) coverage with respect to any and all claims in the civil suit commenced by Robert L. Lussier and Ronald Lussier, and for such other and further relief as this Honorable Court deems just and proper.

5

## COUNT II

15.   OneBeacon reaffirms and realleges its allegations contained in Paragraphs 1 through 8 inclusive and above, with the same force and effect as if more fully set forth herein.

16.   OneBeacon issued by renewal to Eastern and Eastern R.I. on May 1, 2003 a policy of marine insurance, No. C5JH20189, for a term from May 23, 2003 to May 23, 2004, containing a separate and independent overage for Protection and Indemnity. *See Exhibit "A".*

17.   Defendants, Robert L. Lussier and Ronald Lussier, have instituted a civil action against Eastern, et. al., for property damage loss to the S/V PHOENIX arising out of and resulting from a fire on December 4, 2003.

18.   Said civil action is currently pending in the United States District Court for the District of Massachusetts, Civil Action No. 04-CV-11071-RCL.  *See Exhibit "B".*

19.   Eastern has demanded that OneBeacon defend and indemnify it in connection with the said civil action.

20.   Pursuant to the terms and conditions of the aforesaid policy of marine insurance, OneBeacon is not obligated to

6

defend or indemnify Eastern or Eastern R.I. in the said action.

**WHEREFORE**, Plaintiff, OneBeacon America Insurance Company, prays for a judgment declaring that OneBeacon is not obligated to defend and/or indemnify Eastern or Eastern R.I. under the Protection and Indemnity coverage with respect to any and all claims in the civil suit commenced by Robert L. Lussier and Ronald Lussier, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT III

21.   OneBeacon reaffirms and realleges its allegations contained in Paragraphs 1 through 8 inclusive and above, with the same force and effect as if more fully set forth herein.

22.   OneBeacon issued by renewal to Eastern and Eastern R.I. on May 1, 2003 a policy of marine insurance, No. C5JH20189, for a term from May 23, 2003 to May 23, 2004, containing a separate and independent overage for Commercial General Liability. *See Exhibit "A".*

23.   Defendants, Robert L. Lussier and Ronald Lussier, have instituted a civil action against Eastern, et. al., for

7

property damage loss to the S/V PHOENIX arising out of and resulting from a fire on December 4, 2003.

24.   Said civil action is currently pending in the United States District Court for the District of Massachusetts, Civil Action No. 04-CV-11071-RCL.  *See Exhibit "B".*

25.   Eastern has demanded that OneBeacon defend and indemnify it in connection with the said civil action.

26.   Pursuant to the terms and conditions of the aforesaid policy of marine insurance, OneBeacon is not obligated to defend or indemnify Eastern or Eastern R.I. in the said action.

**WHEREFORE**, Plaintiff, OneBeacon America Insurance Company, prays for a judgment declaring that OneBeacon is not obligated to defend and/or indemnify Eastern or Eastern R.I. under the Commercial General Liability coverage with respect to any and all claims in the civil suit commenced by Robert L. Lussier and Ronald Lussier, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT IV

27.   OneBeacon reaffirms and realleges its allegations contained in Paragraphs 1 through 8 inclusive and above,

8

with the same force and effect as if more fully set forth herein.

28. OneBeacon issued by renewal to Eastern and Eastern R.I. on May 1, 2003 a policy of marine insurance, No. C5JH20189, for a term from May 23, 2003 to May 23, 2004, containing a separate and independent overage for Boat Dealer's Insurance. *See Exhibit "A".*

29. Defendants, Robert L. Lussier and Ronald Lussier, have instituted a civil action against Eastern, et. al., for property damage loss to the S/V PHOENIX arising out of and resulting from a fire on December 4, 2003.

30. Said civil action is currently pending in the United States District Court for the District of Massachusetts, Civil Action No. 04-CV-11071-RCL. *See Exhibit "B".*

31. Eastern has demanded that OneBeacon defend and indemnify it in connection with the said civil action.

32. Pursuant to the terms and conditions of the aforesaid policy of marine insurance, OneBeacon is not obligated to defend or indemnify Eastern or Eastern R.I. in the said action.

**WHEREFORE**, Plaintiff, OneBeacon America Insurance Company, prays for a judgment declaring that OneBeacon is not obligated to defend and/or indemnify Eastern or Eastern

9

R.I. under Boat Dealer's Insurance coverage with respect to any and all claims in the civil suit commenced by Robert L. Lussier and Ronald Lussier, and for such other and further relief as this Honorable Court deems just and proper.

DATED at Boston, Massachusetts, this 17th day of February 2005.


By its attorneys,

CLINTON & MUZYKA, P.C.


Thomas J. Muzyka
BBO NO. 365540
Robert E. Collins
BBO NO. 555843
One Washington Mall
Suite 1400
Boston, MA 02108
(617)723-9165

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

**I. (a) PLAINTIFFS**

OneBeacon America Insurance Company

**DEFENDANTS** CLERK'S OFFICE

Eastern Yacht Sales, Inc., Eastern Yacht Sales of Rhode Island, Inc., Robert L. Lussier and Ronald Lussier

2005 FEB 18 P 12: 28

**(b)** County of Residence of First Listed Plaintiff    Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

U.S. DISTRICT COURT
DISTRICT OF MASS.

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Clinton & Muzyka, P.C., One Washington Mall, Suite 1400, Boston, MA 02108

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

Appeal to District Judge from Magistrate Judgment

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. §2201

Brief description of cause:

Declaratory Judgment Action

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☑ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions): JUDGE Lindsay

DOCKET NUMBER 04-cv-11071

DATE

2-18-05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)**  OneBeacon America Insurance Company vs.
    Eastern Yacht Sales, Inc., et al

2.  **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET.   (SEE LOCAL RULE 40.1(A)(1)).**

    ___     I.      **160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.**

    ___     II.     **195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
                    740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.**  *Also complete AO 120 or AO 121
                                                                                    for patent, trademark or copyright  cases

    _X_     III.    **110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                    315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                    380, 385, 450, 891.**

    ___     IV.     **220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                    690, 810, 861-865, 870, 871, 875, 900.**

    ___     V.      **150, 152, 153.**

3.  **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).**
    Lussier vs. Eastern Yacht Sales, Inc., et als, C.A. No. 04-cv-11071-RCL

4.  **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**                                                                YES ☐        NO ☒

5.  **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC 2403)**                                YES ☐        NO ☒
    **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**
                                                                                YES ☐        NO ☐

6.  **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?**                                                    YES ☐        NO ☒

7.  **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS
    (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).**                             YES ☐        NO ☒
    **OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? -
    (SEE LOCAL RULE 40.1(D)).**                                                  YES ☐        NO ☐

8.  **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?**                                                         YES ☐        NO ☒
    **(a)     IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?**_____

9.  **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?**_____

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL SECTION:  YES ☐ NO ☐              OR WESTERN SECTION:  YES ☐     NO ☐**

(PLEASE TYPE OR PRINT)
**ATTORNEY'S NAME**_____Thomas J. Muzyka, Esquire_____
**ADDRESS**  CLINTON & MUZYKA, P.C., One Washington Mall, Suite 1400, Boston, MA 02108
**TELEPHONE NO.** (617) 723-9165_____

(Categform.rev - 3/97)



*The Company issuing this policy is indicated below:*
<u>OneBeacon America Insurance Company</u>

**Policy Number**


**Insured**     *Eastern Yacht Sales, Inc. etal*

**Street**      *335 Lincoln St.*
**City**        *Hingham*
**State**       *MA*          **Zip**          *02043-1609*

**Renewal of**
| CZJH20189 |

**Policy Period**
**At place of Issuance from**     12:01 AM
                                  *May 22, 2003*     **TO:**     *May 22, 2004*

                        **Representative:**
                        **Producer #**       *33294*

**Producer**    *C & L Insurance, Inc.*
**Street**      *7301 West Palmetto Park Rd. 101C*
**City**        *Boca Raton*
**State**       *FL*          **Zip**          *33433*

**NAMED LOCATIONS**

A. *See Attached Schedule of Locations*
B.
C.                                          D.
                                            E.
<u>**COVERAGE SECTION**</u>                 F.

                                                      **PREMIUM**

*Marina Operators Legal Liability*         Covered        $46,606.35     *100% Deposit*
*Protection & Indemnity*                   Covered        $1,500.00
*Commercial General Liability*             Covered        *Incl.*
*Boat Dealer's Insurance*                  Covered        $32,058.00     *100% Deposit*
*Piers, Wharves, & Docks Insurance*        Not Covered    $0.00
*Property Insurance*                       Not Covered    $0.00
*Equipment/Tools*                          Not Covered    $0.00
*Owned Watercraft*                         Not Covered    $0.00
*Terrorism*                                Covered        $1,605.00
*Optional Coverage*                        Not Covered    $0.00

                                           **TOTAL PREMIUM**     $81,769.35
*For account of themselves*                **STATE SURCHARGE**   $0
*Loss, if any payable to:*      *Insured, or order*

**SUBJECT TO CONDITIONS OF FORM ATTACHED HERETO.**
*IMU Manuscript Policy Forms as attached*
*ISO CGL Form CG 00 01 10 01, CG 21 50 09 89*
*CG 04 31 09 98, Endorsement #1-5, CG 21 67 04 02, (2) CG 20 11 11 85*

*LIMITS OF LIABILITY, AMOUNTS OF INSURANCE, AND DEDUCTIBLES AS PER THE DECLARATIONS PAGE*
*THIS POLICY IS MADE AND ACCEPTED SUBJECT TO THE FOREGOING PROVISIONS AND THOSE*
*HEREINAFTER STATED, WHICH ARE HEREBY MADE A PART OF THIS POLICY TOGETHER WITH OTHER SUCH*
*PROVISIONS, STIPULATIONS AND AGREEMENTS AS MAY BE ADDED HERETO, AS PROVIDED IN THIS POLICY.*

*IN WITNESS WHEREOF, this Company has caused this Policy to be executed below, but this*
*Policy shall not be valid unless countersigned by a duly authorized representative of the Company.*

*Daniel R. Smith*
*Secretary*
*Countersigned by*
*this date*          *May 1, 2003*

*Ray Barrette*
*Managing Director & CEO*

                    EXHIBIT "A"          **Authorized Representative**

*Eastern Yacht Sales, Inc. etal*

*Declarations*

*Coverage Section*

*Page 2*

| | | Deductible | Limit | | Premium |
|---|---|---|---|---|---|
| I | *Marina Operators Legal Liability*   *I* | | | | |
| | A. Any One Vessel | | | | |
| | B. Any One Accident or Occurrence | $2,500 | $500,000 | | $46,606.35 |
| | | | $1,000,000 | *Receipts, adjustable @* | 100% Deposit |
| | | | | *Sales, adjustable @* | 2.33% |
| II | *Protection & Indemnity*   *II* | *N/A* | | | 0.285% |
| | A. Any One Accident or Occurrence | | $1,000,000 | | $1,500.00 |
| III | *Commercial General Liability*   *III* | *N/A* | | | |
| | A. General Aggregate Limit (Other than Products/ Comp Ops) | | | | *Included* |
| | B. Products-Completed Operations Aggregate Limit | | $2,000,000 | | |
| | C. Personal and Advertising Injury Limit | | $1,000,000 | | |
| | D. Each Occurrence Limit | | $1,000,000 | | |
| | E. Fire Damage Limit | | $1,000,000 | | |
| | F. Medical Expense Limit | | $100,000 | | |
| | | | $5,000 | | |
| IV | *Boat Dealers Insurance*   *IV* | | | | |
| | A. Any One Vessel | | | | $32,058.00 |
| | B. Any One Location | | $650,000 | | 100% Deposit |
| | C. Any One Accident or Occurrence | $5,000 | $5,000,000 | *Reporting Annually @* | |
| | | | $5,000,000 | 0.64% | |

*V*   *Piers, Wharves, and Docks*   *V*   *Valuation-*

| | Description | | | *Replacment Cost Co-Insurance 90%* | |
|---|---|---|---|---|---|
| | | | | *Insured Value* | *D/A* | *Rate* |
| Location A | Not Covered | | | | |
| Location B | Not Covered | | | | |
| Location C | Not Covered | | | | |
| Location D | Not Covered | | | | |
| Location E | Not Covered | | | | |
| Location F | Not Covered | | | | |

*VI*   *Property Insurance*   *Excl Earthquake*   *VI*   *Valuation-*

| | Description | | | *Replacement Cost Co-Insurance 90%* | | *PWD Total* | $0.00 |
|---|---|---|---|---|---|---|---|
| | | | | *Insured Value* | *Rate*   *Premium* | *Location D/A* | |
| ic A | Building | Not Covered | | | | | |
| | Contents | 0 | | Not Covered | | | |
| | Business Income & Extra Expense | | | | | | |
| c B | Building | Not Covered | | Not Covered | | *Location Total* | $0.00 |
| | Contents | | | Not Covered | | *Location D/A* | |
| | Business Income & Extra Expense | | | | | | |
| c C | Building | Not Covered | | Not Covered | | *Location Total* | $0.00 |
| | Contents | | | Not Covered | | *Location D/A* | |
| | Business Income & Extra Expense | | | | | | |
| :D | Building | Not Covered | | Not Covered | | *Location Total* | $0.00 |
| | Contents | | | Not Covered | | *Location D/A* | |
| | Business Income & Extra Expense | | | Not Covered | | | |
| | | | | | | *Location Total* | $0.00 |
| | | | | | | *Add'l Property* | $0.00 |
| | | | | | | *Pr Sub Total* | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| II | *Equipment/Tools* | *VII* | | *As per Schedule* | Not Covered |
| II | *Owned Watercraft* | *VIII* | | *As per Schedule* | Not Covered |
| | *Terrorism* | *IX* | | | Not Covered |
| | *Optional Coverage* | *X* | | | $1,605.00 |
| | | | | | Not Covered |

*Grand Total*    $81,769.35

ENDORSEMENT #3

to be attached and made part of Policy No.    C5JH20189

of   OneBeacon America Insurance Company

issued to    EASTERN YACHT SALES, INC. etal

## COMPLETE NAMED INSURED

EASTERN YACHT SALES, INC. A DELAWARE CORPORATION
EASTERN YACHT SALES, INC. A FLORIDA CORPORATION
EASTERN YACHT SALES OF RHODE ISLAND, INC. A DELAWARE CORPORATION
EASTERN YACHT SERVICES, INC.

All other terms and conditions remaining unchanged.

———————————————

OneBeacon-America Insurance Company

# Section IX

## *General Exclusions from Coverage Applicable to All Coverage Sections*

Notwithstanding anything to the contrary provided for in any of the Coverage Sections or the General Conditions to Coverage of this Program, the following exclusions from coverage shall be considered paramount and shall override anything stated to the contrary in any of the Coverage Sections and in the General Conditions to Coverage.

### 1. Extended Radioactive Contamination Exclusion Clause (RACE March 1, 2003)

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from:

1.1 Ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;

1.2 The radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;

1.3 Any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (3/1/03) provided that:

If fire is an insured peril, and, where the subject matter is within the USA, its islands, onshore territories or possessions, and, a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2 and 1.4 of the Extended Radioactive Contamination Exclusion Clause 3/1/03, any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

### 2. War Risk Exclusion

This insurance does not apply to loss, damage, liability or expense directly or indirectly caused by, contributed to or resulting from:

2.1 Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack:

2.1.1 By any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

2.1.2 By military, naval or air forces; or

2.1.3 By an agent of any such government, power, authority or forces, except when such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval or air forces) in the country where the property is situated.

2.2   Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

2.3 Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority;

## 3.   Chemical, Biological, Bio-Chemical and Electromagnetic Weapon Exclusion

This insurance does not apply to loss, damage, liability or expense directly or indirectly caused by, or contributed to or resulting from any chemical, biological, bio-chemical or electromagnetic weapon.

## 4. Punitive Damages Exclusion

This insurance does not apply to loss, damage, liability or expense directly or indirectly imposed on the Insured as punitive or exemplary damages, how-ever described and under whatever circumstances.

## 5. Absolute Pollution Exclusion

5.1   This insurance does not apply to any loss, damage, liability or expense that the insured shall become liable to pay and shall pay for "bodily injury", or "property damage" directly or indirectly arising out of, contributed to or resulting from the actual, alleged or threatened "release" of "pollutants" into or upon land, the atmosphere or any water-course, water supply reservoir or body of water.

It is further agreed that the intent and effect of this exclusion is to delete from any and all coverages afforded by this insurance (except as provided in 5.3 below) any "occurrence", claim, suit, cause of action, liability, settlement, judgment, defense costs or expenses in any way arising out of such "release" whether or not such "release" arises out of the activities of the Insured or the activities of others and whether or not such "release" is sudden or gradual and whether or not such "release" is expected, intended, foreseeable, fortuitous, accidental or inevitable, and wherever such "release" occurs.

5.2  It is hereby agreed that this insurance shall not apply to:

5.2.1   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

5.2.1.1   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

5.2.1.2  At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

5.2.1.3  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the Insured or any person or organization for whom you may be legally responsible; or

5.2.1.4  At or from any premises or site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

5.2.1.4.1  If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

5.2.1.4.2  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

5.2.1.4.3  Arising from products manufactured, sold, handled or distributed by or on behalf of the Insured.

5.2.1.4.4  Arising from operations completed by or on behalf of the Insured.

5.2.2  Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in

any way respond to, or assess the effects of "pollutants".

5.2.3  Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

5.3  This exclusion applies to all Coverage Sections; however, Coverage Sections I, II, VI and VII contain provisions which shall be construed as additional to the terms of this exclusion.

## 6. Absolute Asbestos Exclusion

This insurance does not apply to loss, damage, liability, or expense (including "bodily injury," "property damage," "personal injury" or "advertising injury" as defined in Coverage Section III) arising out of or caused by:

6.1  Asbestos, asbestos fibers or products containing asbestos or to any obligation of the Insured to indemnify or contribute with another because of damages arising out of such injury or damage; or

6.2  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection therewith;

6.3  It is further agreed that the Company shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or suit excluded herein.

## 7. Employment Related Practices Exclusion

This insurance does not apply to:

7.1 "Bodily Injury" and/or "Personal Injury" and/or "Advertising Injury" (as defined in Coverage Section III) to:

　　7.1.1 A person arising out of any:

　　　　7.1.1.1 Refusal to employ that person.

　　　　7.1.1.2 Termination of that person's employment; or

　　　　7.1.1.3 Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, employment references, negligent hiring, defamation, harassment, humiliation or discrimination directed at that person; or

7.2 The spouse, child, parent, brother or sister of that person as a consequence of bodily injury and/or personal injury and/or advertising injury to that person at whom any of the employment-related practices described in paragraphs 7.1.1.1, 7.1.1.2 or 7.1.1.3 above is directed.

7.3 This exclusion applies:

　　7.3.1 Whether the insured may be liable as an employer or in any other capacity

　　7.3.2 To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## 8. Definitions

"Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, oil, fuel, cargo, petroleum products, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

"Property Damage" means :

A. Physical injury to tangible property, including all resulting use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

B. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

"Release" means discharge, dispersal, seepage, release or escape of "pollutants".

## Section X

### *General Conditions for Coverage*
### *Applicable to All Coverage Sections*

The following conditions to coverage apply to all Coverage Sections of this insurance program, including endorsements.

#### 1. Insured

With respect to the insurance provided hereunder, the unqualified word "Insured" includes the Named Insured, provided that (1) if the Named Insured is designated as individual, the insurance applies only to the conduct of a business of which he is a sole proprietor, (2) if the Named Insured is or includes a partnership or joint venture, any partner or member thereof but only in respect to his liability as such, and (3) the employees of the Insured acting within the scope of their duties and in the course of their employment.

This insurance applies separately to each Insured against whom claim is made or suit is brought, but the inclusion herein of more than one Insured shall not operate to increase the applicable limit of this Company's liability.

#### 2. Deductible

2.1  This insurance will not pay for loss or damage in any one "occurrence" until the amount of loss or damage exceeds the applicable deductible shown in the Declarations.  This insurance will then pay for the loss or damage in excess of the deductible, up to the applicable limit of insurance shown in the Declarations. One "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2.2  No deductible applies to Coverage Section II or Section III.

#### 3. Limits of Liability

3.1  The Limits of the Liability of this Company are the insurance limits stated in the Declarations for each Coverage Section. The limits include all loss, damage and expenses which arise out of one occurrence.

3.2  The Company's liability with respect to all loss, damage or expenses which arise out of any one accident or occurrence shall not exceed the limit indicated in the Declarations regardless of how many separate injuries or claims arise out of such accident or occurrence.

#### 4. Claim Costs and Expenses

The cost of defending any suit against the Insured on any claim based on a liability or an alleged liability of the Insured covered by any of the liability Coverage Sections, shall be payable by this insurance if the amount of the claim hereunder exceeds the amount of the deductible shown in the Declarations, but this insurance shall not be liable for the cost or expense of prosecuting or defending any suit unless the same shall have been incurred with the written consent of this Company.  This Company, however, reserves the right of naming attorneys who shall represent

the Insured in prosecution or defense of any litigation or negotiations between the Insured and third parties concerning any claim covered by this policy, and shall have the direction of such litigation or negotiations. If the Insured shall fail or refuse to settle any claim as authorized by this Company, the liability of this Company shall be limited to the amount for which settlement could have been made. The right and duty to defend end when the applicable limits of insurance shown in the Declarations has been exhausted in the payment of judgments and/or settlements and/or claim costs and expenses under the relevant Coverage Section; the costs and expenses of defending any suit against the Insured are included in determining when the applicable limits of insurance have been reached.

## 5. Records and Reports

The Insured agrees to maintain accurate records pertaining to coverages under this insurance program and to report to this Company as specified in the Declarations or applicable Coverage Sections. Such records shall be open to inspection by this Company or their representatives at all times during normal business hours during the currency of this policy and for three (3) years following expiration or until final settlement of all claims, whichever is later.

## 6. Inspections and Surveys

This Company has the right but is not obligated to:

6.1 Make inspections and surveys at any time;

6.2 Give you reports on the conditions found; and

6.3 Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. This Company does not make safety inspections nor undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And this Company does not warrant that conditions:

6.4 Are safe or healthful; or

6.5 Give you reports on the conditions found; and

This condition applies not only to this Company, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## 7. Concealment, Misrepresentation or Fraud

This insurance Program shall be void as to all interests insured if, whether before or after a loss, any insured hereunder has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein, or in the case of any fraud or false swearing by any insured hereunder relating thereto.

## 8. Notice of Loss

The Insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn

proof of loss. If claim is made or suit is brought against the Insured, the Insured shall immediately notify the Company and forward to the Company every demand, notice, summons or other legal process.

## 9. Protection of Property and Co-operation of the Insured

In case of loss it shall be necessary and lawful for the Insured, his or their factors, employees and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or Company, in recovery, saving and preserving the property insured in case of loss be considered a waiver or acceptance of abandonment. The expense so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interests.

The Insured shall cooperate with the Company and upon the Company's request shall aid in securing information, evidence, obtaining of witnesses and in all other matters which the Company may deem necessary in respect to any occurrence as hereunder provided.

## 10. Payment of Losses

All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of this Company. No loss shall be paid or made good if the Insured has collected the same from others.

## 11. Subrogation

In the event of any payment under this policy the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or entity, and the Insured shall do whatever necessary to secure such rights.

## 12. Impairment of Recovery Rights

If any act or agreement of the Insured, before or after a loss arises, impairs the Insured's right to recover from others, the Company will not cover the loss or damage; nor will the Company cover any loss or damage which the Insured settles or compromises without the written consent of the Company.

## 13. Cancellation

Either the Insured or the Company can cancel this policy at any time.

13.1 Cancellation By The Insured

The Insured can cancel this insurance by sending the Company notice of the future date the Insured wants the coverage to end. The Company will then refund any unearned portion of the premium you paid, on a short rate basis.

13.2 Cancellation by the Company

The Company can cancel the insurance, or any individual Coverage Section, by sending to the Insured first named in the Declarations, at the address shown on the Declarations, notice of the effective date of cancellation. The Company must do this at least 30 days prior to the cancellation date unless the Company is canceling the insurance because the Insured failed to pay premiums. In that case, the Company is required to give the Insured only 10 days notice. Mailing or delivery of the notice will be proof that the Insured was informed of the cancellation. The Company will also notify any mortgagee shown in the Declarations.

13.3 Additional premium may be due and owing to this Company upon cancellation for those Coverage Sections underwritten on a reporting basis, since reports are to be rendered to the date of cancellation.

### 14. Conformity to Statutes

Terms of this insurance which are in conflict with the statutes of the State wherein this insurance is issued are hereby amended to conform to the minimum requirements of such statutes.

### 15. Transfer of Legal Rights

The Insured may not agree to transfer any legal rights or interest the Insured has in this policy without the prior written consent of the Company.

However, if the Insured is an individual and the Insured dies, the Company will provide the following coverage:

15.1 The insured's legal representative, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

15.2 Any person who has proper temporary legal custody of the Insured's property, but only with respect to liability arising out of the maintenance or use of that property and until a qualified legal representative is appointed.

### 16. No Benefit to Bailee

No person or organization, other than the Insured, having custody of Covered Property, will benefit from this insurance.

### 17. Other Insurance

17.1 The Insured may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under any of the Coverage Sections of this Program. If so, the Company will pay its share of the covered loss or damage. That share is the proportion that the applicable Limit of Insurance under the pertinent Coverage Section bears to the Limits of Insurance of all insurance covering on the same basis.

17.2 If there is other insurance covering the same loss or damage, other than that described in 17.1 above, the Company will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether the Insured can collect on it or not. But the Company will not pay more than the applicable Limit of Insurance.

### 18. Changes

This policy contains all the agreements between the Insured and the Company concerning the insurance afforded. The Insured first named in the Declarations is authorized to make changes in the terms of this Program with the consent of the Company. This policy's terms can be amended or waived only by endorsement issued by the Company and made part of this insurance Program.

### 19. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

19.1 The Company will not pay the full amount of any loss if the value of the insured property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, the Company will determine the most the Company will pay using the following steps:

19.1.1  Multiply the value of the insured property at the time of loss by the coin-surance percentage;

19.1.2  Divide the Limit of Insurance of the property by the figure determined in step 19.1.1;

19.1.3  Multiply the total amount of loss, before the application of any deductible, by the figure determined in step 19.1.2; and

19.1.4  Subtract the deductible from the figure determined in step 19.1.3.

The Company will pay the amount determined in step 19.1.4 or the Limit of Insurance, whichever is less. For the remainder, the Insured will either have to rely on other insurance or absorb the loss itself.

19.2  If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

## 20. Time for Suit

20.1   No action shall lie against the Company for the recovery or any liability loss sustained by the Insured unless such action be brought against the Company within one (1) year after the final judgment or decree is entered in the litigation against the Insured, or in case the claim against the Company accrues without the entry of such final judgment or decree, unless such action be brought within one (1) year from the date of the payment of such action.

20.2   No action shall lie against the Company for the recovery of any claim for loss or damage to the Insured's own property (or other property insured on a first-party basis) unless commenced within one (1) year after the calendar date of the happening of the physical loss or damage out of which the claim is said to have arisen.

20.3  Provided however, that where the limitations of time provided for in 20.1 and 20.2 are prohibited by the State wherein this insurance is issued, then and in that event no action under this insurance shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State.

## 21. Mortgagee and Trustee Interest

21.1  If there is loss to any real property covered under any Coverage Section, the Company will pay any mortgagee or trustee named in the Declarations up to his, her or its interest in that property. This provision will apply to all present or future mortgages in the order of precedence of these mortgages.

Regarding the interest of any mortgagee or trustee designated in the Declarations, this insurance will not be invalidated by any of the following:

21.1.1   Any act or neglect by any mortgagor or owner of the property;

21.1.2  Foreclosure or other proceedings, or notice of sale relating to the property;

21.1.3  Change in title or ownership of the property; or

21.1.4  Occupation of the premises for the purposes more hazardous than existed when this insurance took effect.

The mortgagee or trustee must notify the Company of any change of ownership or occupancy, or of any increase in hazard which he, she or it learns about. If required, by the Company, the insurance program will be amended to reflect this change. If the Insured fails to pay any premium due because of an increase in hazard, the mortgagee or trustee must pay this premium.

And if the Insured fails to pay any premium due under this policy, the Company has a right to collect the premium from the mortgagee or trustee.

21.2  Mortgagee Interest After a Loss

If the Company pays any loss under this insurance program to a mortgagee, and the Company claims it didn't have a legal duty to make payment to the mortgagor or owner, the Company can take over all the rights of the mortgagee, to the extent of our payment. These rights apply to all the securities that were pledged to secure the mortgage loan.

If the Company declines to do that, the Company is allowed to pay the mortgagee the rest of the principal and the interest on the mortgage. Then the Company get a full assignment and transfer of the mortgage right away. That means the Company has all the rights the mortgagee had originally. However, an assignment will not impair the right of the mortgagee to recover the full amount of its claim.

## 22. Captions, Titles Clause

Captions, titles and indexes used in this insurance Program are used for ease of reference only, and are not to be used to interpret the terms, conditions, exclusions or limitations of the insurance provided under the program.

## 23. Reporting and Adjustment

Insurance provided under Sections I and III of this policy are subject to the deposit shown in Declarations, and to an annual adjustment of the earned premium at the rates indicated.

The Insured shall report to the Company, or its Agent, within 30 days following the expiry of this insurance, an accurate statement of:

23.1  Total "receipts", excluding revenues from the sale of boats, supplies, ship stores, or brokerage commission;

23.2  Total "sales";

23.3  Total sales value of boats sold on a brokerage basis.

The earned premium shall be calculated by applying the figures reported above to the rates indicated in the Declarations. If the earned premium is less than the deposit premium, and the coverage section is not subject to a minimum premium, the difference shall be refunded to the Insured. If the earned premium exceeds the deposit premium, the amount of such excess shall be paid by the Insured to the Company as an additional premium at the time of filing the report on which the earned premium is due.

"Receipts" means income from dock/slip rental, mooring rental, storage, hauling/launching, fueling, repairs including parts and labor, regatta fees, sailing schools, yacht club membership dues, boat rental, camping fees, cabin rental, gate fees, sub-contractor receipts, tenant rents and all other miscellaneous income.

"Sales" means income from sale of new and/or used boats and accessories, ship store sales, boat broker commissions, restaurant/convenience store/snack bar/liquor sales.

CG 00 01   10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V — Definitions.

## SECTION I — COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole

      or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site

or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.   Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III — Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.   Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III — Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.   Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit"

seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to

use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods — Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

   To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS — COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I — Coverage A — Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

   a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

   b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II — WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while per-

Form No:  CG 00 01
10 01
Page 8 of 13

forming duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III — LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   b. **Excess Insurance**

      This insurance is excess over:

      (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

         (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

         (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

         (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** — Coverage **A** — Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.   Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.   Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is

greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.   Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7.   Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.   Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.   When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

# SECTION V — DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including

Form No: CG 00 01
10 01
Page 11 of 13

any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; one

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

Form No:  CG 00 01
10 01
Page 12 of 13

c.   While it is being moved from an aircraft, water-craft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.   Vehicles maintained for use solely on or next to premises you own or rent;

c.   Vehicles that travel on crawler treads;

d.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1)  Power cranes, shovels, loaders, diggers or drills; or

(2)  Road construction or resurfacing equipment such as graders, scrapers or rollers;

e.   Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2)  Cherry pickers and similar devices used to raise or lower workers;

f.   Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1)  Equipment designed primarily for:

(a)  Snow removal;

(b)  Road maintenance, but not construction or resurfacing; or

(c)  Street cleaning;

(2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.   The use of another's advertising idea in your "advertisement"; or

g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15.  "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.  "Products-completed operations hazard":

a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)  When all of the work called for in your contract has been completed.

(b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

  (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

  (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on

leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

  a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

  a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

  b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    (2) The providing of or failure to provide warnings or instructions.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT L. LUSSIER, et al }
        Plaintiff }
v. }
 }
EASTERN YACHT SALES, INC.; }
JEANNEAU AMERICA INC.; and }
CHANTIERS JEANNEAU, }
        Defendants }
 }

CIVIL ACTION NO.
04 CV 11071 RCL

## SECOND AMENDED COMPLAINT AND JURY CLAIM

**Introductory Statement.**

1.    This is an action by the plaintiffs, as buyers/owners of a certain sailing vessel known as "The Phoenix," against the retail boat dealer, the manufacturer of the boat, and the company which imported the boat to the United States from its point of manufacture in France. Plaintiffs seek damages for the value of the boat as of on or about December 4, 2003 when the vessel was substantially damaged by an on-board fire caused by a manufacturing defect at the point of its manufacture and/or at the point of its "fit up" prior to delivery of the boat to the plaintiffs caused by the negligence of the defendants and/or breaches of the warranties applicable to this boat.

**Parties.**

2.    Plaintiffs Robert L. Lussier and Ronald Lussier are the buyers/owners of the S/V Phoenix. Plaintiff Robert L. Lussier is an individual presently of 33 Trenton Street, Bellingham, Norfolk County, Massachusetts. Plaintiff Ronald

Lussier is an individual presently of 67 Crescent Avenue, Sausalito, California, hereinafter the plaintiff.

3.   Defendant Eastern Yacht Sales Inc. is a Rhode Island corporation having its usual place of business at 39 Alexander Road, Portsmouth, Rhode Island 02871; and also having a usual place of business in Massachusetts at 335 Lincoln Street, Hingham, Massachusetts 02043. The resident Massachusetts agent for Eastern Yacht Sales Inc. is Jon F. Rotenberg, presently of 476 Heath Street, Brookline, Norfolk County, Massachusetts 02467. Said defendant is the retail seller of the S/V Phoenix, hereinafter Eastern Yacht Sales.

3(A).   Defendant Eastern Yacht Sales of Rhode Island, Inc. is a Rhode Island corporation having its usual place of business at 39 Alexander Road, Portsmouth, Rhode Island 02871; Said defendant is the retail seller of the S/V Phoenix, hereinafter Eastern Yacht Sales of Rhode Island.

4.   Defendant Jeanneau America Inc. is a corporation presently having a usual place of business at 105 Eastern Avenue, Suite 202, Annapolis, Maryland 21403. Said defendant hereinafter Jeanneau America, is the importer of the vessel from its point of manufacture in the country of France. Jeanneau America is a wholly-owned subsidiary of Chantiers Jeanneau, a French corporation, the manufacturer of the S/V Phoenix.

5.   Defendant Chantiers Jeanneau is a French corporation, the manufacturer of the vessel now known as S/V Phoenix, having its usual place of business at Route De La Roches Suvyon, 85500 Les Herbiers, FRANCE.

## COUNT ONE AGAINST
## MANUFACTURER CHANTIERS JEANNEAU

6.   Plaintiff repeats and re-alleges all of the fact set forth in paragraphs 1-5 hereof and incorporates them herein by reference as if individually set forth herein.

2

7.      From its offices in France, defendant Chantiers Jeanneau is engaged in the manufacture, distribution and/or sales of boats in the United States, including the Commonwealth of Massachusetts and the State of Rhode Island, to the general consuming public.

8.      On or about May 1, 2003, plaintiff agreed to purchase a new Jeanneau 45.2 boat to be designed and manufactured by Chantiers Jeanneau and to be delivered to plaintiff on or about July 2003.

9.      This defendant agreed and warranted expressly and impliedly, to design and manufacture the boat so that it would be safe for the use to which it would be a put, by the plaintiff, and that the boat, as designed and manufactured, would be free of defects in design and workmanship which would affect plaintiff's use and enjoyment of the boat.

10.     Thereafter, this defendant manufactured the subject boat, but did so negligently as hereinafter set forth.

11.     On or about July-August 2003, this defendant delivered the boat from its point of manufacture to the United States distributor/importer, and to the retail boat yard with which plaintiff dealt.

12.     After delivery of the boat, to the boat yard, the vessel was fit-up and made ready for delivery to the plaintiff.

13.     Plaintiff took delivery of the subject vessel on or about August 2003, relying upon the warranty of the defendant that the boat was of merchantable quality, free of defects, and safe for its intended usage; and plaintiff thereafter used the subject boat.

14.     The subject boat was negligently manufactured, was defective when manufactured, and when delivered to plaintiff in that the boat's electrical wiring harness and transmission control cable were negligently designed and installed by this defendant too close together in the engine compartment so that under normal operating and usage conditions the electrical wiring and transmission control cable were in contact with one another causing abrasion and chafing. Defendant's negligence caused this condition and allowed the power lead to the cockpit control panel to come in contact with the steel wire strands of the grounded transmission control cable which could and actually did cause an on-board fire.

15.     As a sole result of the defendant's negligence and the defective condition of the boat aforesaid a devastating fire occurred on board the subject boat on or about December 4, 2003 substantially damaging it and proximately causing plaintiff to sustain a loss.

16.     Plaintiff has given due notice of this breach of warranty to this defendant.

WHEREFORE, plaintiff demands judgment against defendant Chantiers Jeanneau for all their monetary loss and damage and that plaintiff further be awarded interest, costs and attorneys' fees.

### COUNT TWO AGAINST IMPORTER/DISTRIBUTOR JEANNEAU AMERICA INC.

17.     Plaintiff repeats and re-alleges all of those facts set forth in paragraphs 1-16, hereof and incorporates them herein by reference as if individually set forth herein.

4

18.   From its offices in Annapolis, Maryland, this defendant engaged in the business of importing and distributing boats manufactured elsewhere by Chantiers Jeanneau to retail sales outlets in the Commonwealth of Massachusetts, and the State of Rhode Island.

19.   On or about May 1, 2003, plaintiff agreed to purchase a new Jeanneau 45.2 boat to be designed and manufactured by Chantiers Jeanneau in France, and thereafter imported into the United States by this defendant, for sale to the retail outlet, and ultimately for delivery to the plaintiff.

20.   This defendant agreed and warranted expressly and impliedly to import and sell boats which would be and are safe for their intended ordinary use, and which would be and are free from negligence in the design and manufacturing processing and free from defects in design and manufacture which would injure, harm or damage consumers.

21.   This defendant imported the subject boat on or about July-August 2003, and thereafter delivered it to the retail outlet for ultimate sale and delivery to the plaintiff on or about August 2003.

22.   Plaintiff took delivery of the subject boat from the retail outlet on or about August 2003 relying upon the warranty of this defendant that the boat was of merchantible quality, free of defects and safe for its intended use.

23.   Thereafter, plaintiff used the subject boat.

24.   The subject boat was negligently designed and manufactured and was defective when manufactured, when imported, when distributed to the retail outlet and when delivered to plaintiff in that the boat's electrical wiring harness and transmission control cable were negligently designed and installed by entities for whose conduct this defendant is responsible, too close

5

together in the engine compartment so that under normal operating and usage conditions the electrical wiring and transmission control cable were in contact with one another causing abrasion and chafing. This defendant's negligence caused the condition that allowed the power lead to the cockpit control panel to come in contact with the steel wire strands of the grounded transmission control cable which could and actually did cause an on-board fire.

25.    As a sole result of the defendant's negligence and defective condition of the boat aforesaid, a devastating fire occurred on board the subject boat on or about December 4, 2003, substantially damaging it and proximately causing plaintiff to sustain a loss.

26.    Plaintiff has given due notice of this breach of warranty to this defendant.

WHEREFORE, plaintiff demands judgment against defendant Jeanneau America Inc. for all their monetary loss and damage and that plaintiff further be awarded interest, costs and attorneys' fees.

## COUNT THREE AGAINST
## EASTERN YACHT SALES INC.

27.    Plaintiff repeats and re-alleges all of those facts set forth in paragraphs 1-26 hereof and incorporates them herein, by reference as if individually set forth herein.

28.    This defendant was on or about May 1, 2003 and at all other time material hereto, engaged in the business of selling boats to consumers.

29.    This defendant sold and delivered to plaintiff a certain Jeanneau 45.2 boat, manufactured, "fit-up," and distributed by co-defendant's Jeanneau America Inc. and Chantiers Jeanneau.

6

30. When purchasing the boat, plaintiff relied upon this defendant's reasonable care and its warranty and the warranties made by the other defendants that the subject boat was merchantible, safe for its intended use and free from defects in its design, manufacture and "fit-up," but in fact it was not. Said boat was not merchantible, was not safe for its intended use and was negligently and defectively designed and manufactured in that the boat's electrical wiring harness and transmission control cable were designed and installed, by entities for whose conduct this defendant is responsible, too close together in the engine compartment so that under normal operating and usage conditions, the electrical wiring and transmission control cable were in contact with one another causing abrasion and chafing. This defendant's negligence caused the condition that allowed the power lead to the cockpit control panel to come in contact with the steel wire strands of the grounded transmission control cable which could and actually did cause an on-board fire.

31. As a sole result of this defendant's negligence and the defective condition of the boat aforesaid, a devastating fire occurred on board the subject boat on or about December 4, 2003, substantially damaging it and proximately causing plaintiff to sustain a loss.

32. Plaintiff has given due notice of this breach of warranty to this defendant.

WHEREFORE, plaintiff demands judgment against defendant Eastern Yacht Sales for all of their monetary loss and damage, and that plaintiff further be awarded interest, costs and attorneys' fees.

7

## COUNT FOUR: AGAINST EASTERN YACHT SALES OF RHODE ISLAND

33.   Plaintiff repeats and re-alleges all of those facts set forth in paragraphs 1-32 hereof and incorporates them herein by reference as if individually set forth herein.

34.   This defendant was on or about May 1, 2003 and at all other time material hereto, engaged in the business of selling boats to consumers.

35.   This defendant sold and delivered to plaintiff a certain Jeanneau 45.2 boat, manufactured, "fit-up," and distributed by co-defendant's Jeanneau America Inc. and Chantiers Jeanneau.

36.   When purchasing the boat, plaintiff relied upon this defendant's reasonable care and its warranty and the warranties made by the other defendants that the subject boat was merchantible, safe for its intended use and free from defects in its design, manufacture and "fit-up," but in fact it was not. Said boat was not merchantible, was not safe for its intended use and was negligently and defectively designed and manufactured in that the boat's electrical wiring harness and transmission control cable were designed and installed, by entities for whose conduct this defendant is responsible, too close together in the engine compartment so that under normal operating and usage conditions, the electrical wiring and transmission control cable were in contact with one another causing abrasion and chafing. This defendant's negligence and the defective condition allowed the power lead to the cockpit control panel to come in contact with the steel wire strands of the grounded transmission control cable which could and actually did cause an on-board fire.

37.   As a sole result of this defendant's negligence and the defective condition of the boat aforesaid, a devastating fire occurred on board the subject boat on or

8

about December 4, 2003, substantially damaging it and proximately causing plaintiff to sustain a loss.

38.    Plaintiff has given due notice of this breach of warranty to this defendant.

WHEREFORE, plaintiff demands judgment against defendant Eastern Yacht Sales of Rhode Island for all of their monetary loss and damage, and that plaintiff further be awarded interest, costs and attorneys' fees.

## COUNT FIVE: VIOLATION OF MGL CHAPTER 93A
## AGAINST ALL DEFENDANTS

39.    Plaintiff repeats and re-alleges all of those facts set forth in paragraphs 1-38 hereof and incorporates them herein by reference as if individually set forth herein.

40.    The acts, practices, and conduct aforesaid of these defendants is a willful, knowing, intentional and bad faith violation of MGL Chapter 93A, Sections 1 et seq. which has caused plaintiff to suffer loss and damage.

41.    Plaintiff has given notice to these defendants as required by law, but defendants have failed, neglected and refused to respond to the plaintiff as required by law.

WHEREFORE, plaintiff demands judgment against all defendants, jointly and severally, for their actual loss and damage; that multiple damages be awarded to the plaintiff pursuant to MGL Chapter 93A Section 1 et seq.; and that plaintiff recover interest, costs and attorneys' fees, all as provided by law.

9

Plaintiffs demand a jury trial on all issues so triable.

Plaintiffs
By their attorney

Robert G. Cohen BBO # 090340
188 Oaks Road
Framingham, MA 01702
(508) 875-0035

Date: October 15, 2004

10