**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION
NO. 05-10327-RCL

**ONEBEACON AMERICA INSURANCE COMPANY,**
     **Plaintiff,**

**vs.**

**EASTERN YACHT SALES, INC.,**
**EASTERN YACHT SALES OF RHODE ISLAND, Inc.,**
**ROBERT L. LUSSIER, and**
**RONALD LUSSIER,**
     **Defendants.**

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Now comes the plaintiff, OneBeacon America Insurance Company, in the above-entitled action, by and through its undersigned attorneys, and hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment as follows.

**I.**    **INTRODUCTION**

This matter involves a suit for Declaratory Judgment on a Maritime Commercial General Liability Policy issued by OneBeacon in favor of Eastern Yacht Sales of Rhode Island, Inc. The underlying action is a products liability claim for fire damage to a vessel that had been sold by Eastern Yacht Sales of Rhode Island, Inc. to Robert L. Lussier and Ronald Lussier on or about August

18, 2003.  On December 4, 2003 a fire occurred on the vessel, causing significant damage to the vessel.  Robert L. Lussier and Ronald Lussier claim that the fire occurred due to the fault of Eastern Yacht Sales of Rhode Island, Inc. and other entities, including the manufacturer and distributor of the vessel, in a suit filed before this Honorable Court entitled "Robert L. Lussier and Ronald Lussier vs. Eastern Yacht Sales of Rhode Island, Inc., Jeanneau America Inc. and Chantiers Jeanneau", Docket No. 04 CV 11071 RCL.  OneBeacon America Insurance Company, the insurer for Eastern Yacht Sales of Rhode Island, Inc., filed this Declaratory Judgment action based upon the terms and conditions of the policy of insurance issued to Eastern Yacht Sales of Rhode Island, Inc., seeking a declaration by this Honorable Court that it owes no duty of defense or indemnity.  In its Answer to the Complaint, Defendant Eastern Yacht Sales of Rhode Island, Inc. included a Counterclaim for unfair and deceptive claims practices under M.G.L. c.93A and for Bad Faith in its denial of the claims.

## II.  **STATEMENT OF MATERIAL UNCONTESTED FACTS**

1.    The plaintiff, OneBeacon America Insurance Company (hereinafter referred to as "OneBeacon"), is a Massachusetts insurance corporation with a principal place

of business at One Beacon Street, Boston, Massachusetts.
See Plaintiff's Complaint attached hereto as Exhibit 1 and
the Answer of Defendant Eastern Yacht Sales of Rhode
Island, Inc, attached hereto as Exhibit 2.

2.   The defendant, Eastern Yacht Sales, Inc. (hereinafter
referred to as "Eastern"), is a Delaware corporation with
a principal place of business at 335 Lincoln Street,
Hingham, Massachusetts.  See Exhibit 1 and Exhibit 2.

3.   The defendant, Eastern Yacht Sales of Rhode Island,
Inc. (hereinafter referred to as "Eastern R.I."), is a
Delaware corporation with a principal place of business at
39 Alexander Road, Portsmouth, Rhode Island.  See Exhibit
1 and Exhibit 2.

4.   The defendant, Robert L. Lussier, resides at 33
Trenton Street, Bellingham, Massachusetts.  See Deposition
of Robert Leo Lussier at page 6, attached hereto as
Exhibit 3.

7.   The defendant, Ronald Lussier, is a resident of 67
Cresent Avenue, Sausalito, California.  See Deposition of
Ron Lussier, Volume I at page 5, attached hereto as
Exhibit 4.

8.   The S/V PHOENIX is a 2003 45' Jeanneau sloop that was
owned on December 4, 2003 by Robert L. Lussier and Ronald

4

Lussier.   See Bill of Sale dated June 30, 2003 attached hereto as Exhibit 5.

9.   The vessel was purchased by Eastern Yacht Sales of Rhode Island from Jeanneau America, Inc. on August 8, 2002 for $240,153.00.   See invoice from Jeanneau dated July 16, 2002 attached hereto as Exhibit 6.

10.   In 2002, Robert L. Lussier initially looked at a Jeanneau "Phoenix" at a boat show while visiting his son, Ronald Lussier, in California.   When he returned to Massachusetts, he contacted Eastern Yacht Sales of Rhode Island (hereinafter referred to as "Eastern Yacht")[1] about purchasing a Catalina sailboat, similar to one that he had previously owned.   While attending the Eastern Yacht facility in Portsmouth, Rhode Island, he saw the 45 foot Jeanneau out of the water.   After seeing the vessel at the boat show and at the Eastern Yachts facility, he fell in love with the boat.   See Exhibit 3 at pages 11-14.

11.   On April 30, 2003, Robert Lussier agreed to a vessel purchase price in the amount of $295,000.00 and paid a $1,000.00 deposit.   He also agreed to the purchase of

---

[1] Eastern Yacht Sales, Inc. was originally named in the underlying products liability action as a defendant but was subsequently dismissed.  Plaintiff does note that the Third Amended Complaint, filed after Eastern Yacht Sales, Inc. was dismissed, appears to again allege a cause of action against that entity. Plaintiff assumes that the cause of action is against Eastern Yacht Sales of Rhode Island, Inc., the entity that sold the vessel.  To the extent there still remains a cause of action against Eastern Yacht Sales, Inc., the same allegations in this Motion For Summary Judgment would apply because they are insured under the same policies of insurance.

additional safety equipment in the amount of $1,262.83.
The sale was contingent upon closing on his house and
included a trade-in of a 1987 30' Catalina.  There were
some modifications to the vessel that he requested to be
performed prior to purchase.  These included the
installation of radios, a water maker, a desalinator, a
heating system, and an additional GPS.  *All of these items
were part of the original purchase price.*  See invoice
attached hereto as Exhibit 7 and Exhibit 3 at pages 15-18.

12.  The remaining purchase price of $308,041.00 was paid
by Mr. Lussier on June 30, 2003 and a Bill of Sale was
executed from Eastern Yacht Sales to Robert L. Lussier and
Ron Lussier.  See Invoice and copy of check attached
hereto as Exhibit 8.

13.  The sea trials were performed in Portsmouth, Rhode
Island and were attended by Will Collins of Eastern Yacht
Sales of Rhode Island, Inc., the head mechanic from
Eastern Yacht Sales of Rhode Island, Inc., and Plaintiff
Robert L. Lussier.  The sea trial lasted about two hours
in Narragansett Bay and no problems were noted.  He
accepted delivery and payment for the vessel was
finalized.  See Exhibit 3 at pages 29-30.

14.  *On August 18, 2003, Robert L. Lussier signed a
Delivery and Release Certificate.*  See Delivery and

Release Certificate attached hereto as Exhibit 9.

15.   There were some problems with the vessel after delivery, but there were no problems with the engine, mechanical systems, or through hull fittings.  Robert L. Lussier described some of the problems with the vessel as "minor".  See Exhibit 3 at pages 19-21.

16.   The vessel's shake down cruise was a trip to Maine. This was attended by Robert L. Lussier, Ron Lussier, Donald Lussier (Robert Lussier's brother), and Donald Lussier's wife, Paulette.  When they returned from Bar Harbor, Eastern Yacht took the vessel back because there was still some work that had not been finished, including the water maker, radio, and boom vang.  There were no problems with the engine, generator, batteries or the inverter system.  See Exhibit 3 at pages 31-35.

17.   Robert L. Lussier's next voyage was a short trip to Block Island, Rhode Island with Donald and Paulette Lussier and Barbara, Robert Lussier's girlfriend.  There was a minor problem with the water maker and the radar reflector was lost.  Otherwise, there were no other problems.   See Exhibit 3 at pages 37-38

18.  On November 9, 2003, Plaintiff, along with his son Ron and Ron's partner Dan began their anticipated extended voyage.  The trip was planned to go south via the

7

intercoastal waterway to the Caribbean, through the Panama
Canal to Hawaii, and then back to Sausalito, California.
See Exhibit 3 at pages 39-40.

19.  It quickly became apparent that Ron and his partner
were not up to a trip of that magnitude.  At Ron's
request, they put in to Stonington, Connecticut where Ron
Lussier and Dan Greening departed the vessel.  Robert L.
Lussier proceeded single handed the rest of the way.

20.  It took approximately three weeks to reach Myrtle
Beach, South Carolina.  During that time, there were many
stops.  He was mostly motoring in the intercoastal,
although there was some sailing during that time.  He had
no problems with the engine during that period.  See
Exhibit 3 at pages 39-42.

21.  Along the route, the vessel grounded on several
occasions.  On these occasions, which he termed "soft
groundings," it was necessary to work the vessel to free
it.  He never engaged any commercial assistance.  The most
recent grounding was 1-2 days before the fire on December
4, 2003.  See Exhibit 3 at pages 45-46.

22.  The vessel arrived in the Myrtle Beach area on
December 4, 2003 at approximately 1700 hours.  The weather
was cold, but good.  There were no problems with the
vessel that day.  See Exhibit 3 at pages 43-44.

8

23.  Mr. Lussier dropped anchor at dusk in a small area off the Intercoastal.  He made some dinner and started the heating system with the engine running.  He was listening to a book on tape in the main cabin when his eyes started burning.  When he got up, he noticed that the salon was full of smoke.  See Exhibit 3 at pages 46-47.

24.  Mr. Lussier was unable to reach the source of the fire, so he went back to the cabin, grabbed a few belongings, and exited the forward cabin hatch.  See Exhibit 3 at pages 47.

25.  Mr. Lussier launched the kayak and jumped in.  From the kayak, he called the Coast Guard by his cell phone. It took about 45 minutes for the fire equipment to arrive. See Exhibit 3 at page 48.

26.  Plaintiffs do not make any claim for personal injury in the fire.   See Plaintiffs' Third Amended Complaint attached hereto as Exhibit 10.

27.  On December 5 or 6, 2003, Robert L. Lussier contacted his insurance company, Blue Water Insurance Company, to report the incident.  A surveyor was assigned and estimated that the repairs would cost approximately $120,000.00.  The insurer has offered to repair the vessel but this has been refused.  See Exhibit 3 at pages 56-62.

28.  The damage to the vessel as a result of the fire was

mostly in the engine room, guest compartments, and main salon.  There was also some smoke and melting damage in other compartments.  See Exhibit 3 at pages 65-67.

29.  Mr. Lussier's understanding is that the fire started by a short in an unfused wire in the wiring bundle on the starboard side of the engine room.  See Exhibit 3 at pages 73-74, 95.

30.  *Mr. Lussier **testified that Cay Electronics did not do any work in the area of the wiring bundle to his knowledge.  He testified that Cay Electronics' work was mainly in the cockpit area.***  See Exhibit 3 at 85-86, 96.

31**.  *Mr. Lussier's understanding was that the fire occurred due to a manufacturing defect.***  He understood that a wire in the wiring bundle had chafed.  When pressed, he stated that he makes no claim that any work performed by Cay Electronics caused the fire.  He also stated that he makes no claim against Eastern Yacht Sales other than in its capacity as the seller of the vessel. See Exhibit 3 at pages 99-100.

32.  Mr. Lussier affirmatively stated that there was **no work performed on the vessel that was not within the scope of the original purchase and sale agreement.**  See Exhibit 3 at pages 108-110.

33.  Ron Lussier testified that he is not aware of any

reports that maintain that the fire was caused by any of the work performed by Cay Electronics or Eastern Yacht Sales.  See Deposition of Ron Lussier Vol. II at page 50 attached hereto as Exhibit 11.

### III.  <u>POLICIES OF INSURANCE</u>

### A.    <u>Marina Operators Liability Policy</u>

OneBeacon issued by renewal to Eastern and Eastern R.I. on May 1, 2003 a policy of marine insurance, No. C5JH20189, for a term from May 23, 2003 to May 23, 2004, containing a separate and independent overage for Marine Operators Legal liability (MOLL). A copy of the policy is attached hereto as Exhibit "12".

### B.    <u>Protection and Indemnity Policy</u>

OneBeacon issued by renewal to Eastern and Eastern R.I. on May 1, 2003 a policy of marine insurance, No. C5JH20189, for a term from May 23, 2003 to May 23, 2004, containing a separate and independent overage for Protection and Indemnity.  *See Exhibit* "*12*".

### C.    <u>Commercial General Liability Policy</u>

OneBeacon issued by renewal to Eastern and Eastern R.I. on May 1, 2003 a policy of marine insurance, No. C5JH20189, for a term from May 23, 2003 to May 23, 2004, containing a separate and independent overage for Commercial General Liability.  *See Exhibit* "*12*".

The Policies provide that "We will pay those sums that the insured becomes legally liable to pay as damages because of the "bodily injury" or "property damage" to which this insurance applies."

The Policies further provide several exclusions.  In particular Exclusion k. provides:

k.    **Damage To Your Product**

"Property damage" to "your product" arising out of it        or any part of it.

In the definition section of the Policy, "Your Product" is defined.  It provides:

21.   "Your product"

a.    Means:

(1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)  You

b.    Includes

(1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"

12

## IV.  **STANDARD OF REVIEW**

Summary judgment is appropriate where the moving
party has shown, based upon the pleadings, discovery and
affidavits, "that there is no genuine issue as to any
material fact and that the moving party is entitled to a
judgment as a matter of law".  Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of
the suit under the governing law".  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes
that are irrelevant or unnecessary will not be counted."
*Id.*  A <u>genuine</u> issue of material fact exists where the
evidence with respect to the material fact in dispute "is
such that a reasonable jury could return a verdict for the
nonmoving party".  *Id.*

Because the dispute between OneBeacon America
Insurance Company and Eastern Yacht Sales of Rhode Island,
Inc. rests upon the interpretation of an insurance policy,
disposition by summary judgment is appropriate.  *McNeill
v. Metro. Prop. & Liab. Ins. Co., 650 N.E. 2d 793, 795
(Mass. 1995).*

## V.  **Analysis**

Under Massachusetts law, a liability insurer's duty
to defend is determined

> by matching the third-party complaint with the policy
> provisions:  if the allegations of the complaint are
> "reasonably susceptible" of an interpretation that
> they state or adumbrate a claim covered by the policy
> terms, the insurer must undertake the defense.

*Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 788
*N.E.2d 522, 530 (Mass. 2003)* (citations and internal
quotation marks omitted).  Insurance policy exclusions are
strictly construed under Massachusetts law.  *Hakim v.*
*Mass. Insurers' Insolvency Fund, 675 N.E. 2d 1161, 1165*
*(Mass. 1997)*.  Unambiguous terms are to be given their
usual and ordinary meaning, but ambiguities are to be
construed against the insurer.  *Id*.  Moreover, the scope
of the insurer's duty to defend is broad and goes beyond
its obligations of indemnity.  *Global Naps, Inc. v. Fed.*
*Ins. Co., 336 F.3d 59, 62 (1st Cir. 2003)*

That duty is not unlimited, however.  Where "the
allegations in the underlying complaint lie expressly
outside the policy coverage and its purpose", the insurer
has no obligation to defend the claimant.  *Herbert A.*
*Sullivan, Inc., 788 N.E.2d at 531* (citations and internal
quotations marks omitted).  The insurer bears the burden
of establishing release from coverage by virtue of a
policy exclusion.  See *Brazas Sporting Arms, Inc. v. Am.*

14

*Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000).*

In construing an insurance contract, normal rules of contract interpretation are utilized. *Amtrol, Inc. v. Tudor Insurance Company, 2002 WL 31194863 (D.MA. 2002).* This requires examining the language of the policy, affording each term its ordinary and usual meaning. *Hakim v. Massachusetts Insurer's Insolvency Fund, 424 Mass. 275, 280 (1997).* Consideration is given to "what an objectively reasonable insured, reading the relevant policy language , would expect to be covered." *Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993)*

In the underlying action pending in the United States District Court for the District of Massachusetts, Plaintiffs Robert L. Lussier and Ron Lussier have filed a claim for maritime products liability against the vessel manufacturer, distributor, and seller. Their claim is only for property damage to the vessel's hull. There is no claim for any personal injury or damage to any third party.

The underlying facts are that the vessel was damaged due to an alleged manufacturer's defect in placing the

excess wire bundle in the immediate vicinity of the shifter cable, allowing it to chafe and initiate the fire.

The present Declaratory Judgment Action involves the interpretation of three coverages provided by OneBeacon America Ins. Co.

The Marina Operators Legal Liability coverage insures the legal liability of the assured as a marina operator. There is no such allegation in the underlying lawsuit.

The Protection and Indemnity coverage applies to watercraft operated, rented to third parties, or at a boat show. It is inapplicable to the incident herein.

The Boat Dealers coverage applies to vessels owned by the assured or sold but not yet delivered. This also is inapplicable to the facts herein.

The only pertinent coverage is the Commercial General Liability policy. This cover applies to "property damage". The form contains the standard exclusions for property damage to "Your Product" and "Your Work." "Your Product" is a defined term and includes the S/V PHOENIX. There is no dispute that the vessel was "distributed" by Eastern Yacht Sales of Rhode Island, Inc.

*Commerce Insurance Company v. Betty Caplette Builders, Inc.,* 420 Mass. 87, 647 N.E.2nd 1211 (1995), involved a house that was built and sold by a developer,

16

which was allegedly defective.  The CGL policy at issue
contained the exact language as the policy herein.  The
issue on appeal was whether the whole house could be
considered "Your Product."  In discussing the policy
language, the Massachusetts Supreme Judicial Court noted:

> As Professor Roger C. Henderson states in a
> frequently cited article:
>
> "The risk intended to be insured is the possibility
> that the goods, products or work of the insured, once
> relinquished or completed, will cause bodily injury
> or damage to property other than to the product or
> completed work itself, and for which the insured may
> be found liable. The insured, as a source of goods or
> services, may be liable as a matter of contract law
> to make good on products or work which is defective
> or otherwise unsuitable because it is lacking in some
> capacity. This may even extend to an obligation to
> completely replace or rebuild the deficient product
> or work. This liability, however, is not what the
> coverages in question are designed to protect
> against. The coverage is for tort liability for
> physical damages to others and not for contractual
> liability of the insured for economic loss because
> the product or completed work is not that for which
> the damaged person bargained."
>
> Roger C. Henderson, Insurance Protection for Products
> Liability and Completed Operations--What Every Lawyer
> Should Know, 50 Neb.L.Rev. 415, 441 (1971).
>
> Similarly, in his treatise, Liability Insurance,
> Rowland Long explains that
>
> "[The injury to products or work] exclusion is meant
> to deny coverage in situations where the insured or
> its subcontractor has caused damage to the product,
> work, property or structure. The purpose of the
> exclusion is to prevent the insured from using its
> product liability coverage as a form of property
> insurance to cover the cost of repairing or replacing
> its own defective products or work.

17

> * * * * * *
> "The injury to products or work exclusion is intended
> to exclude insurance for damage to the insured's
> product or work, but not for damage caused by the
> insured's product or work. Thus, the exclusion does
> not apply where the product or work causes damages to
> other persons or property. In such a situation, while
> there would not be coverage for damage to the work or
> product itself, damages caused by the product to
> other work or products would be covered.
> * * * * * *
> "The injury to work or products exclusion is
> consistent with the goal of the CGL, which is to
> protect the insured from the claims of injury or
> damage to others, but **1214 not to insure against
> economic loss sustained by the insured due to
> repairing or replacing its own defective work or
> products...."
>
> 2 R. Long, Liability Insurance § 11.09(2) (1993).
> Simply stated, exclusion (n) is intended to exclude
> coverage for "business risks."

*Id. at 90-92.* The court went on to note that a CGL policy

is not intended to cover ordinary "business risks", which

includes repairing or replacing faulty products. *Id. at*

*92.* This is the exact situation involved in the

litigation herein. The Lussiers' are seeking repair or

replacement of a faulty product only. As was made evident

by the Massachusetts Supreme Judicial Court, this is not

the type of action which a Commercial General Liability is

designed to cover or which it does cover under the terms

and conditions of the policy.

The same exclusion was involved in *Amtrol, Inc. v.*

*Tudor Insurance Company, 2002 WL 31194863 (D.MA. 2002).*

18

In that case, District Judge Woodlock noted that Exclusion
k is a "business risk" exclusion and that "these
exclusions are all premised on the theory that liability
policies are not intended to provide protection against
the insured's own faulty workmanship or product, which are
the normal risks associated with the product of the
insured's business.  Rather, the policies are meant to
afford coverage to other property damaged by the insured's
work or product." *Id. at 9.*  In discussing CGL Policies,
District Judge Woodlock notes that they

> …are intended to protect the insured from liability
> for injury or damage to the persons or property of others;
> they are not intended to pay the costs associated with
> repairing or replacing the insured's defective work and
> products, which are purely economic losses.  Finding
> coverage for the cost of replacing or repairing defective
> work would transform the policy into something akin to a
> performance bond.

*Id at 6 (*quoting *Qualls v. Country Mut. Ins. Co., 123*

*Ill.App.3rd 831, 833-34(1984)).*

Here, it is uncontested that the vessel was sold by
Eastern Yacht Sales of Rhode Island, Inc. to Robert L.
Lussier and Ronald Lussier and that the only damage
claimed is damage to the item itself; to wit: the S/V
PHOENIX.  Further, Robert L. Lussier was unequivocal in
his testimony that all work on the vessel was performed as
part of the purchase and sale of the vessel, even though

19

it was performed after the Acceptance of Delivery date.

This case involves the very risk that Professors Henderson and Long and District Judge Woodlock noted was not meant to be covered.  It is a claim brought by the vessel's purchaser that alleges a manufacturing defect. The Third Amended Complaint clearly refers, in the Introductory Statement, to

> **"an on-board fire caused by a manufacturing defect at the point of its manufacture and/or at the point of its 'fit up' prior to delivery of the boat to the plaintiffs caused by the negligence[2] of the defendants and/or breaches of the warranties applicable to this boat…"**

Paragraph 3(A) of the Third Amended Complaint identifies the assured as "the retail seller."  Count Three, directed against Eastern Yacht Sales of Rhode Island, Inc., alleges that the vessel was not merchantable, safe for intended use, and was negligently designed, manufactured and "fit-up".

Bases upon the established precedent it is clear that Plaintiff OneBeacon America Insurance Company owes no duty under the terms and conditions of its insurance policies to indemnify or defend Defendant Eastern Yacht Sales of Rhode Island, Inc. in the underlying action brought by

---

[2] The law is clear that Plaintiffs do not have a cause of action for negligence.  *East River Steamship Co. v. TransAmerica DeLeval Inc., 476 U.S. 858 (1986)*

20

Robert L. Lussier and Ronald Lussier for the damage to the S/V PHOENIX as a result of the fire on December 4, 2003.

## VI.  VIOLATION OF M.G.L. c.§93A AND BAD FAITH

In its answer to the Complaint herein, Defendant has raised a Counterclaim for violation of M.G.L. c. §93A and for Bad Faith denial of coverage.  Plaintiff additionally prays this Honorable Court enter Summary Judgment in its favor on all counts of the Counterclaim by Eastern Yacht Sales of Rhode Island, Inc.

Should this Honorable Court find that as a matter of law Plaintiff was correct in denying coverage for the defense and/or indemnity in the underlying action, then Plaintiff cannot, as a matter of law, be found liable for an unfair and deceptive claim practice under M.G.L. c. §93A.  *Rischitelli v. Safety Ins. Co., 423 Mass. 703 (1996); Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344, review denied 423 Mass. 1114 (1996).*  The same is true for the allegation of bad faith.  *Premier Ins. Co. of Massachusetts v. Furtado, 428 Mass. 507, 703 N.E.2nd 208 (1998); Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3rd 33 (1st Cir. 2000).*

## VII. CONCLUSION

Based upon the arguments presented herein, Plaintiff prays this Honorable Court grant Summary Judgment in its

favor on all counts alleged in the Plaintiff's Complaint and Defendant's Counterclaim and issue a Declaratory Judgment that the insurer owes Eastern Yacht Sales of Rhode Island, Inc. no duty of defense in the action brought by Robert L. Lussier and Ronald Lussier and, also, that the insurer owes no duty to indemnify Eastern Yacht Sales, Inc. for any damages found to be due Robert L. Lussier and Ronald Lussier from Eastern Yacht Sales, Inc. in the action pending before this Honorable Court. Plaintiff also prays this Honorable Court issue judgment in its favor on all counts raised in Defendant's Counterclaim.

By its attorneys,

**CLINTON & MUZYKA, P.C.**


**"/s/Robert E. Collins"**
**Thomas J. Muzyka**
**BBO NO. 365540**
**Robert E. Collins**
**BBO NO. 6555843**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

Dated:  April 14, 2006